UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EVAN RATCLIFF,<br><br>                              Plaintiff,<br>v.<br>BRIAN WILLIAMS et al.,<br><br>                             Defendants. | Case No. 2:21-cv-00292-ART-MDC<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 35] |

Plaintiff Evan Ratcliff, an inmate at Southern Desert Correctional Center (SDCC), brings this civil-rights action under 42 U.S.C. § 1983 to redress his placement in administrative segregation for over a year in violation of his Fourteenth Amendment due process rights. Before the Court is Defendants' Motion for Summary Judgment (ECF No. 35).

I.  **BACKGROUND**

Plaintiff alleges the following. While incarcerated at High Desert State Prison (HDSP), Ratcliff served approximately thirty days in disciplinary segregation and the prison then classified him to return to general population on October 10, 2017. (ECF No. 1-1 at 4.) However, instead of returning Plaintiff to general population, the prison transferred him to a prison in Arizona on November 30, 2017. (*Id.*) Nine days later, Plaintiff returned to HDSP for an upcoming eye surgery. (*Id.*) Immediately upon arrival, HDSP officials placed Plaintiff in administrative segregation, even though HDSP had classified him as general population prior to his transfer and the Arizona prison had also classified him as general population, (*Id.*) Plaintiff's doctor informed Plaintiff that he would need to

see him on a regular basis for approximately a year, and Plaintiff spent that time in administrative segregation despite attempts to grieve his placement until a Full Classification Committee determined he could return to general population on October 31, 2018. (*Id.* at 5; ECF No. 35-2 at 10.) Plaintiff did not receive regular review hearings regarding his placement in administrative segregation for a year, despite regulations requiring inmates to receive a hearing every thirty days. (ECF No. 1-1 at 6.) Plaintiff now brings a Fourteenth Amendment due process claim in connection with this confinement.

## II.   LEGAL STANDARD

### a. Summary Judgment

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting or disputing a fact "must support the assertion by … citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *Id.*

In determining summary judgment, courts apply a burden-shifting analysis. A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the nonmovant bears the burden at trial, as is the case here, the movant can meet its burden by either (1) presenting evidence to negate an

essential element of the nonparty's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case. See *id.* at 323-24. After the movant has met its burden, the burden shifts to the nonmovant to come forward with specific facts showing a genuine issue of material fact remains for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although "[o]n summary judgment the inferences to be drawn from the underlying facts...must be viewed in the light most favorable to the party opposing the motion," *id.* (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586-87 (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. 242 at 252. In other words, the non-moving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Angel v. Seattle-First nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)). Instead, to survive summary judgment, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing admissible evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. 317 at 324.

If the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, then the respondent must show by specific facts the existence of a genuine issue for trial. *Anderson*, 477 U.S. 242 at 250. "If, as to any given material fact, evidence produced by the moving party... conflicts with evidence produced by the nonmoving party . . . we must assume the truth of the evidence set forth by the nonmoving party with respect to that material fact." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). If reasonable minds could differ on material facts, summary judgment is

1  inappropriate because summary judgment's purpose is to avoid unnecessary
2  trials only when the material facts are undisputed; if not, the case must proceed
3  to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995)
4  (citing *Lindahl v. Air France,* 930 F.2d 1434, 1436 (9th Cir. 1991)).

   b. Administrative Exhaustion

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). [A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court[.]" *Id.* at 88. But, because the PLRA requires exhaustion of those administrative remedies "as are available," the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." *See Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010). In other words, an inmate must exhaust only those grievance procedures "that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust administrative remedies is a non-jurisdictional affirmative defense that defendants must raise and prove. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *Jones v. Bock*, 549 U.S. 199, 212-17 (2007). A "defendant must first prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy. ... Then, the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him by showing that the local remedies were ineffective,

4

unobtainable, unduly prolonged, inadequate, or obviously futile. … The ultimate burden of proof, however, remains with the defendants." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Albino*, 747 F.3d at 1166.

    c. Qualified Immunity

Qualified immunity shields certain government officials from liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The point of shielding officials from liability except when they violate "clearly established" rights is to "ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Nonetheless, officials who violate statutory or constitutional rights knowingly or through plain incompetence are not shielded from liability. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Thus, if "every 'reasonable official would have understood that what he is doing violates that right,'" then the right is clearly established, and qualified immunity does not provide a defense. *See al-Kidd*, 563 U.S. at 741. For a constitutional or statutory right to be clearly established, there does not need to be a factually indistinguishable case spelling out liability, but existing precedent "must have placed the statutory or constitutional question beyond debate." *Id.*

**III. DISCUSSION**

    a. Personal Participation

As an initial matter, the Court addresses Defendants' argument that they cannot be held liable under Section 1983 because they played no role in Plaintiff's

5

placement in administrative segregation. Defendants assert that "the classification reviews were completed based on medical holds as a result of Ratcliff's cornea surgery." Because "[n]either of the Defendants are medical personnel[,] [t]hey had no control over medical decisions, including holds based on expected medical care and convalescence following medical procedures." (ECF No. 35 at 18.) At the February 8, 2024, hearing, parties agreed that while the Offender Management Division (OMD) makes final placement determinations, the wardens and caseworkers make recommendations to OMD and thus directly influence the placement process. In addition, at the hearing, Defendants conceded that not all inmates with medical holds are placed in administrative segregation, showing that the placement is not a purely medical decision. Thus, the Court rejects Defendants' argument that they played no role in Plaintiff's placement.

b. Exhaustion

Defendants also argue that Plaintiff failed to exhaust his claim as required by the Prison Litigation Reform Act (PLRA). The Court finds that Plaintiff properly exhausted his claim for the following reasons.

First, Plaintiff completed all required parts of the grievance process. Plaintiff exhausted his claim by filing an informal and first level grievance because the grievance coordinator found Plaintiff's grievance was "resolved" at the first level grievance stage by his return to general population on October 31, 2018, following a classification hearing. (ECF No. 35-2 at 10.) Since Plaintiff returned to general population, he did not need to file a second level grievance. Even though Plaintiff ultimately filed a second level grievance because he was uncertain about the grievance process (ECF No. 38 at 133), that does not change the fact that Plaintiff exhausted his claim after his first level grievance.

In addition, Plaintiff did not change the grieved issue as Defendants contend. Defendants claim that they were never on notice that Plaintiff was

grieving the lack of review of his placement, but instead thought he was only challenging his initial placement in administrative segregation. (ECF No. 35 at 13-14.) However, a reasonable jury could find that Plaintiff necessarily challenged the review process because if he had received proper reviews, then he would have been released as requested. Also, Plaintiff points out that any change of his placement would have required a classification review hearing, (ECF No. 38 at 134), so Defendants should have been aware that there was an issue with the review process.

Plaintiff's lawsuit was not filed prematurely. Defendants argue that Plaintiff violated procedure by filing this case on December 28, 2021, before he received a response to his amended second level grievance. (ECF No. 35 at 14.) "[W]here inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, [the court has] deemed the exhaustion requirement satisfied." *Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021). Here, Plaintiff filed his amended second level grievance on February 24, 2019, and the prison was supposed to respond within sixty days but for unknown reasons did not respond until April 4, 2022, over two years later. (ECF Nos. 35 at 14; 35-2 at 2-5; 35-3 at 39.) As previously explained, Plaintiff exhausted after his first level grievance, so any issues with the second level grievance do not affect this lawsuit. Regardless, Plaintiff reasonably attempted to follow the prison's guidelines by filing the amended second level grievance when he was unsure about proper procedure, and the prison impeded his good-faith efforts by unreasonably delaying its response. It appears that Defendants concede this point since they also argue for the first time in their reply brief that Plaintiff's claim was barred by statute of limitations. (ECF No. 39 at 4-5.) Defendants cannot accuse Plaintiff of simultaneously filing his lawsuit too early and too late. Thus, the Court finds that Plaintiff's complaint was timely.

c. Qualified Immunity

The Court will also not grant summary judgment based on qualified immunity because there exist multiple genuine issues of material fact as to whether Defendants violated Plaintiff's clearly established constitutional rights.

Plaintiff's claim may implicate a liberty interest based on the hardships imposed by and length of time in administrative segregation. Courts have considered placement in administrative segregation as "action taken within the sentence imposed" that does not infringe on any liberty interest, *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir 1997) (quoting *Sandin v. Conner*, 515 U.S. 472 (1995)), especially if the inmate's stay is for a short period. *See, e.g., Richardson v. Runnels*, 594 F.3d 666, 672-73 (9th Cir. 2010) (affirming summary judgment on Plaintiff's due process claim when he was only in administrative segregation for sixteen days). Summary judgment is not appropriate, however, when it is unclear whether the administrative segregation sentence imposed an "atypical and significant hardship." *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996) (reversing summary judgment and remanding for further development of the record on inmate's due process claim), *amended by Keenan v. Hall*, 135 F.3d 1318 (9th Cir. 1998). In *Keenan,* the court held that an inmate's six month stay in an Intensive Management Unit (IMU) may implicate a due process liberty interest. A due process claim may exist when the prisoner has alleged material differences between the conditions in general population and administrative segregation. *See Jackson v. Carey*, 353 F.3d 750, 755-57 (9th Cir. 2003) (reversing dismissal of plaintiff's due process claim); *Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) (same). When a prison housed an inmate in an IMU for twenty-seven months without periodic, meaningful review of his status, the Ninth Circuit found the length of confinement of particular significance and determined that the confinement "imposed an atypical and significant hardship under any plausible

baseline." *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 987-90 (9th Cir., 2014).

Here, there is a genuine issue of material fact as to whether Plaintiff's confinement in administrative segregation for over a year implicated a liberty interest. While Defendants assert that conditions in general population are roughly comparable to those in administrative segregation, Plaintiff identified multiple differences between general population and administrative segregation, including an inability to earn good time credits, no recreational or tier time, no religious services, no food or clothing packages, no work opportunities, no programming such as self-help programs, restrictions on phone calls, and limited access to showers. Also, Plaintiff was held in administrative segregation for over a year, which is much longer than in *Keenan,* 83 F.3d at 1088 (six months), and far beyond the short periods that courts have found implicated no liberty interest, *Sandin*, 515 U.S. at 487 (thirty days), *Richardson v. Runnels*, 594 F.3d at 672-73 (sixteen days). Here, the restrictions Plaintiff faced in administrative segregation are similar to those in *Brown*, where the inmate also claimed that he did not receive periodic review of his placement, was denied religious services and educational and vocational opportunities, had extremely limited recreation and visitation opportunities, and faced significant restrictions on personal property. *Brown*, 751 F.3d at 985. The Court concludes a reasonable juror could find an "atypical and significant hardship" exists and thus a jury should resolve this factual issue.

There is also a factual issue whether Plaintiff received regular, periodic reviews. While Defendants allege that Plaintiff received regular reviews, and thus they did not violate Plaintiff's due process rights, Plaintiff contests whether most of these hearings occurred. (ECF No. 38 at 76-77.) The Court finds that this factual dispute is best resolved by a jury.

1    Having found that there is a genuine issue of material fact as to whether
2  Defendants violated Plaintiff's constitutional rights, the Court proceeds to the
3  "clearly established" prong of the qualified immunity analysis. Defendants
4  argue, without citing to any caselaw, that "there is no clearly established right
5  to receive periodic reviews of placement in administrative segregation for non-
6  disciplinary purposes." (ECF No. 35 at 17.) In *Brown*, the Ninth Circuit held
7  that the Defendants were entitled to qualified immunity because Ninth Circuit
8  caselaw had not previously held that "a lengthy confinement without
9  meaningful review may constitute atypical and significant hardship[.]" 751 F.3d
10 at 989-90. While *Brown* did not specifically address administrative segregation,
11 this Court has already discussed factual similarities between the confinement
12 in that case and the present case, which creates a genuine issue of material fact
13 as to whether it was clearly established that Plaintiff's confinement for over a
14 year in its administrative segregation program, allegedly without periodic
15 review, violated his due process rights. The Court denies summary judgment so
16 a jury can decide this issue.

### IV.    CONCLUSION

It is therefore ordered that Defendants' Motion for Summary Judgment (ECF No. 35) is denied.

DATED THIS 23rd day of February 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE